IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,      )
                               )
      Plaintiff,               )
                               )
      -vs-                     )   Case No. CR-16-185-F
                               )
WAYNE BARNES,                  )
                               )
      Defendant.               )



* * * * * * *

TRANSCRIPT OF PROCEEDINGS

HAD ON FEBRUARY 9, 2017, AT 3:00 P.M.

BEFORE THE HONORABLE STEPHEN P. FRIOT

U.S. DISTRICT JUDGE, PRESIDING

* * * * * * *



CHANGE OF PLEA



Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123

A P P E A R A N C E S

ON BEHALF OF THE GOVERNMENT:

    Ms. Julia Barry
    Assistant United States Attorney
    U.S. Attorney's Office
    210 West Park Avenue
    Suite 400
    Oklahoma City, Oklahoma 73102

ON BEHALF OF THE DEFENDANT:

    Mr. Robert L. Wyatt, IV
    Wyatt Law Office
    P.O. Box 1947
    501 N. Walker Ave.
    Suite 110
    Oklahoma City, Oklahoma 73101

**P R O C E E D I N G S**

1

2          (The following proceedings were had February 9, 2017,

3    with Court, counsel, and defendant present:)

4               THE COURT:  Good afternoon.  We are here in Criminal

5    16-185, United States of America vs. Wayne Barnes, for a

6    change of plea proceeding.

7          Counsel will please give your appearances.

8               MS. BARRY:  Good afternoon, your Honor.  Julia Barry

9    on behalf of the United States.  With me at counsel table, my

10   cocounsel, Kristy Parker, from the civil rights division, and

11   Special Agent Charles Thumann.

12              THE COURT:  Thank you.

13              MR. WYATT:  Bob Wyatt on behalf of the defendant,

14   who is present at counsel table.  Also with me at counsel

15   table is Ryan Haney, an associate in my office, your Honor.

16              THE COURT:  Thank you.  You may be seated.

17         Let me give everyone just a bit of an introduction to the

18   posture of this matter at this point.  It's a little bit

19   unusual for plea proceedings in this court.  I do have before

20   me a plea petition contemplating a plea to Count I of the

21   Indictment and a plea agreement proposing a plea and

22   conclusion of this case under Rule 11(c)(1)(C), which is

23   unusual to say that -- at least in this court.

24         I met with counsel not too terribly long ago, and we

25   talked about the Rule 11(c)(1)(C) aspect of the matter.  We

 1   had an opportunity to discuss -- and very professionally so on

 2   both sides -- the general factual scenario.  And it was my

 3   conclusion -- although most assuredly not a commitment of any

 4   kind, it was my conclusion that it looked reasonably favorable

 5   in terms of the Court's ultimate acceptance of the Rule

 6   11(c)(1)(C) plea.  Obviously, the plea itself leaves a fair

 7   amount of leeway, and that's very much in the mix.

 8        So the Court's ultimate acceptance of the Rule

 9   11(c)(1)(C) plea, which I will say, once again, is unusual for

10   this district but I think justified in this case, is subject

11   to review of the presentence report.  Frankly, I don't expect

12   any big surprises.  I suppose that's a self-proving or

13   self-disproving statement, but I don't expect any big

14   surprises from the presentence report.  Perhaps the better way

15   to say it is I'm assuming there will be no big surprises in

16   the presentence report.

17        And it's on that basis that we are proceeding.  So I am

18   going to take the defendant's plea.  Assuming that we

19   successfully complete the plea -- and I have no doubt -- no

20   real doubt about that -- assuming we successfully complete the

21   plea, then the probation office will be directed to prepare

22   the presentence report, and with the benefit of the

23   presentence report and perhaps the parties' sentencing

24   memoranda, I will make my final decision.  But, as I say,

25   things -- we wouldn't be here if I didn't see things pointing

1    in the general direction of accepting -- ultimately accepting

2    the Rule 11(c)(1)(C) plea agreement that has been breached.

3         So with the benefit of that background, does either side

4    have any concerns about proceeding on that basis this

5    afternoon?

6         What says the government?

7              MS. BARRY:  No, your Honor.

8              THE COURT:  What says the defendant?

9              MR. WYATT:  No, your Honor.

10             THE COURT:  Very well.

11        The defendant and his counsel will please come to the

12   lectern.  And I will ask the two of you to please trade

13   places.

14             MR. WYATT:  Yes, sir.

15             THE COURT:  Both of those microphones will pick you

16   up.

17        And the clerk will please administer the oath to the

18   defendant.

19             THE CLERK:  Please raise your right hand.

20        (Defendant sworn.)

21             THE COURT:  State your full name, please, sir.

22             THE DEFENDANT:  Wayne Evans Barnes.

23             THE COURT:  Mr. Barnes, do you understand that you

24   are now under oath and if you answer any of my questions

25   falsely, your answers may later be used against you in another

1  prosecution for perjury or making a false statement?  Do you

2  understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  In a few minutes, government counsel

5  will be asking you questions which you will answer under oath

6  for the purpose of establishing a factual basis for your plea.

7  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And that brings me to one very important

10 point, and that is this:  If I or anyone else should say or do

11 anything here this afternoon that you do not fully understand,

12 or if at any time you have any questions, I want you to

13 interrupt and ask me your question.  And we will go no further

14 until I have fully answered your question.  So will you do

15 that for me?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  I see here that you are 56 years old and

18 you have 20 years of education; is that right?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Okay.  I take it from that, obviously,

21 you are fully literate.  Did you carefully review this plea

22 petition --

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  -- with your counsel at or before the

25 time you signed it?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  And did you also carefully review the

3    plea agreement at or before the time you signed it?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Okay.  Have you been treated recently

6    for any mental illness or addiction to narcotic drugs of any

7    kind?

8           THE DEFENDANT:  No, sir.

9           THE COURT:  As you stand before the Court today, are

10   you under the influence of any drug, medication, or alcoholic

11   beverage of any kind?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  As you know, you are before the Court on

14   the basis of this one-count Indictment that was returned and

15   filed early last October.  Have you received a copy of these

16   charges?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And have you fully discussed these

19   charges and the case in general with your counsel, Mr. Wyatt?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Are you fully satisfied with the counsel

22   representation and advice given to you in this case by

23   Mr. Wyatt?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Mr. Barnes, has anyone attempted in any

1   way to force you to plead guilty in this case?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  Are you pleading guilty of your own free

4   will to the one count in this Indictment because you are, in

5   fact, guilty of that offense?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Are you a United States citizen?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Do you understand that the offense to

10  which you are pleading guilty is a felony offense and that if

11  your plea is accepted, you will be adjudged guilty of that

12  offense, and that adjudication may deprive you of valuable

13  civil rights, such as the right to vote, the right to hold

14  public office, the right to serve on a jury, and the right to

15  possess any kind of a firearm?  Do you understand that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  The government will please state two

18  things:  Number one, the maximum possible penalty provided by

19  law, and please repeat for the record the essential term of --

20  terms of the Rule 11(c)(1)(C) agreement with respect to

21  sentencing.

22           MS. BARRY:  Certainly, your Honor.

23       Mr. Barnes today is pleading guilty to a one-count

24  Indictment, as your Honor indicated, charging him with

25  depriving an inmate of his civil rights under color of law

1  under 18 U.S.C. Section 242.  It carries up to life in prison,

2  a maximum $250,000 fine, a term of supervised release of up to

3  five years, and a $100 special assessment.

4      The plea agreement in this case, as your Honor has

5  indicated, is a bit unusual.  The parties have entered into

6  this agreement under Federal Rule of Criminal Procedure

7  11(c)(1)(C), pursuant to which they agree that should the

8  Court choose to accept the plea agreement, a sentence of

9  between zero and 51 months in this case is appropriate.

10      The parties further agree, pursuant to that agreement,

11  that Mr. Barnes should receive a two-level downward adjustment

12  for his acceptance of responsibility in this case and that the

13  United States here moves for an additional one-level downward

14  adjustment for his speedy resolution of the matter.

15      The parties further agree that the Court will enter an

16  order of restitution to all victims of Mr. Barnes' criminal

17  conduct, and Mr. Barnes agrees that he must pay restitution as

18  ordered by the Court.

19      In exchange for the promises and concessions made by the

20  United States in this case, Mr. Barnes knowingly and

21  voluntarily is waiving his right to appeal his guilty plea or

22  any other aspect of his conviction, appeal his sentence

23  provided that it is within that zero to 51-month range that's

24  been contemplated by the parties, or to collaterally challenge

25  or move to modify his conviction or sentence except with

1    respect to ineffective assistance of counsel claims.

2              THE COURT:  Thank you.

3        Mr. Barnes, I am going to -- having heard the statement

4    as just now made by Ms. Barry, I am going to ask you two or

5    three questions.  Number one, you have heard the outline of

6    the possible consequences of your plea.  Do you understand

7    those possible consequences of your plea?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  And, number two, as long as you are

10   sentenced within the range set forth in the plea agreement,

11   you are giving up your right to appeal the sentence.  Do you

12   understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Very well.  Number three, I don't think

15   a dollar amount has been set for restitution.  Am I right

16   about that?

17             MS. BARRY:  That is correct, your Honor.  The United

18   States has not received any restitution requests from the

19   victim of this case, which would here be the victim's family.

20   I do not contemplate necessarily receiving such requests.  If

21   the United States were to receive such information, I think I

22   would request a separate restitution hearing where the parties

23   could present evidence.

24             THE COURT:  Very well.  So that one aspect of the

25   matter is not determined with certainty, I think is the

1  fairest way to put it.  It is, at least, theoretically

2  possible that there will be a request for restitution.  How

3  that would all play out no one knows.  But in the event that

4  an appropriate request for restitution is made, then it will

5  be my duty to resolve any issues relating to that.  Do you

6  understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Okay.  Very well.

9      Now, I am going to talk to you just a bit about the

10 sentencing guidelines.  Again, this is a bit of an unusual

11 situation in that if this case is -- goes to a conclusion on

12 the basis of the -- these plea proceedings, then they are --

13 by definition there will be an upper and lower limit on the

14 range of incarceration that's possible in this case.  But it's

15 still, I think, important for me to talk about the sentencing

16 guidelines because my ultimate decision in this case, at

17 least, will be made with one eye to the advisory guidelines.

18 The guidelines are only advisory.  And come sentencing, it's

19 going to be my duty to hear everything the government has to

20 say and everything that you have to say, either both directly

21 and through your very capable counsel.

22     So the guidelines are not the be all end all in this

23 case.  And I want you to understand that.  But I think it is

24 important for everyone to understand that it is my duty in

25 sentencing, even in this sort of a situation, to be mindful of

1    what the guidelines have to offer on an advisory basis.  And

2    the extent of the influence of that on sentencing is yet to be

3    determined.

4         So with that understanding, I am assuming that -- without

5    getting into the substance of any conversation that you have

6    had with Mr. Wyatt, I'm assuming that you and Mr. Wyatt have

7    had some conversation about what the advisory guideline range

8    of punishment might be in this case.  Am I right about that?

9              THE DEFENDANT:  That's correct, your Honor.

10             THE COURT:  Very well.

11        I will not be able to determine the advisory guideline

12   range that I look at in order for whatever influence it may or

13   may not have on the sentence until after the presentence

14   report has been completed and you and the government have had

15   an opportunity to challenge the reported facts and the

16   application of the advisory guidelines as recommended by the

17   probation officer.  And the sentence ultimately imposed by the

18   Court in this case, if it's pursuant to this plea agreement,

19   will be within the range specified in the plea agreement.  And

20   it may or may not line up with what the guidelines say.  Do

21   you understand that?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  After your advisory guideline range has

24   been determined, the Court does have the authority to depart

25   either within or outside of the framework of the advisory

1  guidelines and to impose a sentence that is more severe or

2  less severe than the sentence called for by the advisory

3  guidelines.  Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  In determining the sentence in this

6  case, I will consider your entire background and criminal

7  history, if any, including the conduct described in the charge

8  you are pleading to as well as any other relevant or similar

9  conduct whether or not that conduct is charged in this case.

10  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  For these reasons, Mr. Barnes, I want

13  you to understand that, as a practical matter, as you stand

14  before the Court today, subject to the upper and lower limits

15  in the agreement, I have no way of knowing with any certainty

16  what the consequences of your plea will be.  And, for that

17  reason, you have -- subject to those upper and lower limits,

18  you have no way of knowing with any certainty what the

19  consequences of your plea will be.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  By pleading guilty, you are giving up

22  the right to have a jury determine one way or the other the

23  effects which, if proven to a jury beyond a reasonable doubt,

24  might result in a more severe sentence.  Do you understand

25  that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And in the federal system, parole has

3    been abolished, and if you are sentenced to prison, you will

4    not be released on parole.  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Now, we have talked about the plea

7    agreement, and Ms. Barry very certainly nicely covered the

8    essential terms of the plea agreement, including with respect

9    to waivers.  To the very best of your knowledge, do you

10   understand the essential terms of that plea agreement with

11   respect to waivers?  Do you believe you understand that

12   agreement?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay.  Very well.

15      Mr. Wyatt, do you have any concerns about your client's

16   understanding of the waiver provisions of the plea agreement?

17         MR. WYATT:  No, your Honor.

18         THE COURT:  Very well.

19      Mr. Barnes, do you have any questions about the waiver

20   provisions in the plea agreement?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Do you agree with those waivers?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Very well.

25      I want to cover with you some rights that go along with

1    having a jury trial, because by pleading guilty you are giving

2    up these rights.

3        First of all, do you understand, sir, that you do have a

4    right to plead not guilty to any offense charged against you

5    and to persist in that plea, and that you would then have a

6    right to a trial by jury?  Do you understand that?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  At that trial, you would be presumed to

9    be innocent and the government would have to prove your guilt

10   beyond a reasonable doubt.  Do you understand that?

11               THE DEFENDANT:  Yes, sir.

12               THE COURT:  At that trial you would have the right

13   to the assistance of counsel for your defense, the right to

14   see and hear all the witnesses and have them cross-examined in

15   your defense, the right on your own part to decline to testify

16   unless you voluntarily elected to do so in your own defense,

17   and the right to the issuance of subpoenas or compulsory

18   process to compel the attendance of witnesses to testify in

19   your defense.  Do you understand that?

20               THE DEFENDANT:  Yes, sir.

21               THE COURT:  And if you were to decide not to testify

22   or put on any evidence, those facts could not be used against

23   you.  Do you understand that?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  By entering a plea of guilty, if that

1    plea is accepted by the Court, there will be no trial and you

2    will have waived or given up your right to a trial, as well as

3    all those other rights associated with a trial as I have just

4    described them.  Do you understand that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  The government will please state the

7    elements of the offense to which the defendant is pleading

8    guilty.

9            MS. BARRY:  Your Honor, deprivation of rights while

10   acting under color of law under 18 U.S.C. Section 242 carries

11   the following elements:  First, that Mr. Barnes acted under

12   color of law; second, that he deprived Mr. Wilson of a right

13   secured or protected by the Constitution or laws of the United

14   States; third, that Mr. Barnes acted willfully; and for this

15   to be a felony conviction, which it is here, that bodily

16   injury or death resulted from the defendant's actions.

17           THE COURT:  Thank you.

18       The government will now please examine the defendant to

19   establish the factual basis for the plea.

20                         **WAYNE BARNES,**

21   having been previously duly sworn, was examined and testified

22   as follows:

23                         **EXAMINATION**

24   BY MS. BARRY

25   Q    Good afternoon, Mr. Barnes.

```
 1   A    Hi.
 2   Q    In June of 2013, were you the jail administrator of the
 3   McClain County jail?
 4   A    Yes, ma'am.
 5   Q    Is the McClain County jail in the Western District of
 6   Oklahoma?
 7   A    Yes, ma'am.
 8   Q    Would you agree that a jailer or jail administrator must
 9   act pursuant to law or under color of law?
10   A    Yes, ma'am.
11   Q    Would you further agree that you were acting under color
12   of law in your capacity as jail administrator between June
13   16th and June 19, 2013?
14   A    Yes, ma'am.
15   Q    Was Inmate Kory Wilson booked into McClain County jail on
16   or about June 16, 2013?
17   A    Yes, ma'am.
18   Q    At the time that Mr. Wilson was booked into the jail, was
19   he a Type 1 diabetic requiring insulin?
20   A    Yes, ma'am.
21   Q    The morning of June 19, 2013, were you aware that
22   Mr. Wilson represented that he was an insulin-dependent Type 1
23   diabetic?
24   A    Yes, ma'am.
25   Q    At that time, were you also aware that failure to provide
```

1  a diabetic with insulin for three days could create a serious
2  health risk for that person?
3  A    Yes, ma'am.
4  Q    Would you agree that the right to receive medical care is
5  a constitutional right under the due process clause under the
6  U.S. Constitution?
7  A    Yes, ma'am.
8  Q    Would you further agree that Mr. Wilson had a right to
9  receive such medical care?
10  A    Yes, ma'am.
11  Q    Were you the person in charge of making decisions at
12  McClain County jail on June 19, 2013?
13  A    Yes, ma'am.
14  Q    Were you aware that Kory Wilson suffered a diabetic
15  episode that day?
16  A    Yes, ma'am.
17  Q    Did you fail to obtain insulin for Mr. Wilson on June 19,
18  2013?
19  A    Yes, ma'am.
20  Q    Did you also decide not to transport Mr. Wilson to the
21  hospital on June 19, 2013?
22  A    Yes, ma'am.
23  Q    Were those decisions made willfully?
24  A    Yes, ma'am.
25  Q    Would you, therefore, agree that you willfully deprived

1  Kory Wilson of medical care?

2  A    Yes, ma'am.

3  Q    In other words, were you deliberately indifferent on June

4  19, 2013, to a risk that Mr. Wilson might suffer serious

5  bodily harm?

6  A    Yes, ma'am.

7  Q    Would you further agree that Kory Wilson died because you

8  willfully deprived him of that medical care?

9  A    Yes, ma'am.

10          MS. BARRY:  I have no further questions, your Honor.

11          THE COURT:  Very well.

12      Mr. Barnes, how do you now plead to the charge set forth

13  in this Indictment, guilty or not guilty?

14          THE DEFENDANT:  Guilty, sir.

15          THE COURT:  It is the finding of the Court in the

16  case of United States of America vs. Wayne Barnes that the

17  defendant is fully competent and capable of entering an

18  informed plea; that he is aware of the nature of the charges

19  and the consequences of the plea so far as those consequences

20  can be known at this time; and that the plea of guilty is a

21  knowing and voluntary plea supported by an independent basis

22  in fact containing each of the essential elements of the

23  offense charged in the Indictment.

24      The plea is not at this point accepted with finality for

25  the reasons I have already said.  At the appropriate time,

1    after I have the presentence report, I anticipate that I will

2    accept the plea and adjudge the defendant, with finality,

3    guilty of the offense charged in the Indictment.

4        As everyone understands, the next step will be the

5    preparation of the presentence report.  After I review the

6    presentence report, I will make my final determination with

7    respect to acceptance of the plea.  And at that point, we will

8    proceed with sentencing unless, contrary to my general

9    expectation, I reject the agreement set forth -- the

10   sentencing range set forth in the plea agreement.

11       So with that understanding, the matter is now referred to

12   the probation office for a presentence investigation and

13   report.

14       Mr. Barnes, I urge you to cooperate in every way with the

15   probation office in the preparation of that report.  Because

16   although I am confident that that report will not be my only

17   source of information to consider with respect to sentencing

18   in this case, that report will certainly be an important

19   source of information for me to consider in connection with,

20   first of all, whether -- to accept the Rule 11(c)(1)(C)

21   agreement; and, number two, with respect to the ultimate

22   sentence to be imposed in this case.

23       You and Mr. Wyatt will have the opportunity to read that

24   report and file any objections to it before the sentencing

25   hearing.  And you and Mr. Wyatt will certainly have the

1  opportunity to speak on your behalf at the sentencing hearing.

2  So you are now referred to the probation office for a

3  presentence investigation and report.  You and your attorney

4  should be sure to lodge any objections to that report within

5  the time allotted by the rules.

6  Because of the nature of the plea agreement and

7  specifically the range of possible punishment that is

8  contemplated by the plea agreement, I have no trouble

9  concluding that this case presents exceptional circumstances

10  with respect to the possibility of mandatory detention.  And,

11  for that reason, it is my conclusion -- subject to any

12  announcement the government may have suggesting otherwise, it

13  is my conclusion that because of the fact that it is a Rule

14  11(c)(1)(C) agreement and, number two, because of the range of

15  punishment set forth in that plea agreement, that we do have

16  exceptional circumstances which point very strongly in the

17  direction of not detaining the defendant on this day.

18  What says the government?

19  MS. BARRY:  Your Honor, we agree.

20  THE COURT:  Very well.

21  That will be the order of the Court.

22  Now, Mr. Barnes, of course, you are on conditions of

23  release.  It is very important for you to continue to comply

24  with your conditions of release.  Any significant violation of

25  those conditions could have serious consequences.

1    And I can't say for sure when sentencing will take place,

2  but it does take a little time to prepare the presentence

3  report.  And so it will be -- certainly be a little bit later

4  on in the spring before the matter comes on for sentencing.

5    Is there anything further in this matter this afternoon

6  from the government?

7         MS. BARRY:  No, your Honor.

8         THE COURT:  From the defendant?

9         MR. WYATT:  No, your Honor.

10         THE COURT:  Very well.

11    We have another matter at 3:30, so you are excused.

12

13         (Proceedings concluded at 3:30 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2    I, Christina L. Clark, Federal Official Realtime Court

3    Reporter, in and for the United States District Court for the

4    Western District of Oklahoma, do hereby certify that pursuant

5    to Section 753, Title 28, United States Code that the

6    foregoing is a true and correct transcript of the

7    stenographically reported proceedings held in the

8    above-entitled matter and that the transcript page format is

9    in conformance with the regulations of the Judicial Conference

10   of the United States.

11

12       Dated this 16th day of February, 2017.

13

14                           s/CHRISTINA L. CLARK_____
                             Christina L. Clark, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov – ph(405)609-5123